[ECF No. 78]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

STEPHEN PATRONI,

             **Plaintiff,**

    v.

HARRAH'S ATLANTIC CITY
OPERATING COMPANY, LLC et al.,

             **Defendants.**

Civil No. 18-15637 (ECR/SAK)

## OPINION AND ORDER

This matter is before the Court on the Motion to Strike Plaintiff's Errata Sheet [ECF No. 78] filed by Defendants Harrah's Atlantic City Operating Company, LLC d/b/a/ Harrah's Resort Atlantic City and Caesars Entertainment Corporation (collectively, "Defendants"). The Court received Plaintiff Stephen Patroni's opposition [ECF No. 79], Defendants' reply [ECF No. 80], as well as a copy of Plaintiff's entire deposition transcript [ECF No. 81]. The Court exercises its discretion to decide Defendants' motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons discussed in detail herein, Defendants' motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff was employed as an EVS Cleaner, performing janitorial services, at Defendants' Atlantic City casino and hotel. *See* Compl. ¶¶ 18–10 [ECF No. 1]. Plaintiff, who suffers from cerebral palsy, alleges that Defendants discriminated against him because of his disability. *See id*. ¶¶ 23–33. Plaintiff alleges that Defendants created a hostile work environment and ultimately

terminated him in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). *See id.* ¶¶ 34–45.

On March 3 and 5, 2021, Plaintiff was deposed *via* Zoom videoconference. *See* Defs.' Br. at 2 [ECF No. 78-1]. During the depositions, lunch and other breaks were taken. At the beginning of each day of deposition, defense counsel instructed Plaintiff to tell him if he did not understand any question. *See id.* At the end of the deposition, Plaintiff's counsel examined Plaintiff. *See* Pl.'s Dep. 446:11–450:25 [ECF No. 81].

Following the depositions, Plaintiff's counsel submitted a proposed 16-page Errata Sheet containing some 140 proposed changes to Plaintiff's deposition testimony. *See* Defs.' Br. at 4. Defendants objected to Plaintiff's Errata Sheet and now move to strike it. Defendants argue that Plaintiff's Errata Sheet is a blatant misuse and abuse of Federal Rule of Civil Procedure 30(e) and contend Plaintiff is attempting to rewrite and undo material admissions made during his deposition. *See id.* at 2–6, 14–20. Defendants also argue Plaintiff failed to provide sufficient justifications for the changes to his sworn testimony. *See id.* Defendants assert Plaintiff's proffered justifications are "stock statements" and/or "boilerplate objections" that lack credibility and are "insufficient to justify the substantive and contradictory changes." *Id.* at 18–19. Moreover, Defendants argue the sheer volume of changes constitutes an impermissible abuse of Rule 30(e) as Plaintiff is attempting to create a "preferred narrative" for his legal claims. *Id.* at 20.

Plaintiff opposes Defendants' motion, contending that circumstances exist which warrant allowing his Errata Sheet to become part of the record. *See* Pl.'s Opp'n at 3. Plaintiff argues that his "cognitive difficulties and impairments" led to "inaccurate, incorrect, or incomplete testimony" during portions of the depositions, which the Errata Sheet seeks to correct. *Id.* at 2. Plaintiff

2

explains his disability can "manifest as an ability to please, to agree and/or say what he believes someone wants to hear, and to mask confusion with understanding." *Id*. at 9.  Plaintiff argues that based upon these alleged circumstances and what he characterizes as the Third Circuit's flexible approach to Rule 30(e), all of the Errata Sheet changes should be permitted. *Id*. at 6–8.  Lastly, Plaintiff argues that a failure to allow his Errata Sheet into the record will cause him severe harm. *See id*. at 12–15.

Defendants reply arguing that Plaintiff's reliance on any cognitive disability, or impairment is untimely and not supported by the record. *See* Defs.' Reply [ECF No. 80].  Defendants further argue that Plaintiff did not raise these alleged concerns at any time during his testimony, nor did Plaintiff offer them as justification for any of the proposed Errata Sheet changes. *See id*. at 3–4. Defendants also argue that Plaintiff's material changes to the Errata Sheet would harm them by stripping them of the ability to pursue summary judgment. *See id*. at 10–12.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 30(e), a party may make "changes in form or substance" to deposition testimony.  In order to make such changes, the party seeking the changes must comply with a set of mandatory procedural requirements. *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 265 (3d Cir. 2010).  First, the party must request to review the transcript before the deposition itself is completed. *See id*.  Next, the party "may submit changes to [the] deposition within thirty days after being notified by the officer that the transcript is available for review." *Id*. (internal citations omitted).  The party seeking changes must "include with the proposed changes a statement of reasons for making them." *Id*. at 266.  The Court may appropriately strike an errata sheet if the party proffering the changes fails to state the reason for the changes. *Id*.

If the foregoing procedural requirements are satisfied, the "majority rule . . . followed by District Courts in this Circuit, is that a deponent may make changes that contradict the original answers given." *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-4194, 2015 WL 4461583, at *1 (D.N.J. July 21, 2015) (quoting *Aetna Inc. v. Express Scripts, Inc.*, 261 F.R.D. 72, 75 (E.D. Pa. 2009). To prevent an abuse of this rule, "all of the deponent's answers, including old and new, remain a part of the record, and [the opposing party is] free to cross-examine the witness at trial on [the] contradictory answers." *Aetna Inc.*, 261 F.R.D. at 75.

Nevertheless, "a party may not generate from whole cloth a genuine issue of material fact (or eliminate the same) simply by re-tailoring sworn deposition testimony to his or her satisfaction." *EBC, Inc.*, 618 F.3d at 267–68 (citing *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005)). The Third Circuit has concluded that the analysis applicable to "sham affidavit" cases is also applicable to errata sheet cases. *See id.* at 269. A sham affidavit is defined as

> a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment. A sham affidavit cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmovant. . . . [I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.

*Id.* (citing *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007)). This doctrine stems from the idea that "depositions are more reliable than affidavits." *Jiminez*, 503 F.3d at 253. The Third Circuit has adopted a "more flexible approach" over the formulaic application of the doctrine. *See EBC, Inc.*, 618 F.3d at 269. Based on this approach, "not all contradictory affidavits are necessarily shams." *Id.* "[W]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." *Id.*

Courts undergo a fact-sensitive inquiry to assess "if sufficiently persuasive reasons are given, if the proposed amendments truly reflect the deponent's original testimony, or if other circumstances satisfy the court that amendment should be permitted." *Sivolella*, 2015 WL 4461583, at *1 (quoting *EBC, Inc.*, 618 F.3d at 270). At the Court's discretion, and as the circumstances may warrant, remedial measures may be taken. *See EBC, Inc.*, 618 F.3d at 268.

## ANALYSIS

At the outset, the Court has reviewed the complete transcripts of Plaintiff's March 3 and 5, 2021 depositions, as well as the proposed changes contained in the Errata Sheet. The Court finds that Plaintiff has met the procedural requirements of FED. R. CIV. P. 30(e) to make changes to his deposition testimony. Plaintiff requested a review of the deposition transcripts at each hearing and submitted proposed changes for both days of deposition testimony within 25 days and 20 days of the respective depositions. *See* Pl.'s Opp'n at 4–6. These facts are not disputed and are supported by the record. *See* Ex. B to Defs.' Mot. at 9, 19 [ECF No. 78-3].

The Court is less persuaded, however, that Plaintiff has offered sufficient reasons for the proposed changes, that the proposed changes truly reflect Plaintiff's original testimony, or that circumstances exist that warrant the changes. In an attempt to streamline its analysis, the Court classified the purported purposes of the proposed changes into the following five (5) categories:

(1) Category A – Changes to purportedly make an answer more accurate and complete.

(2) Category B – Changes based on questions purportedly being confusing, vague, or misleading.

(3) Category C – Changes purportedly stemming from Plaintiff being confused by the question or misunderstanding the question or misspeaking.

(4) Category D – Changes to purportedly reflect "what more accurately occurred."

5

(5) Category E – Changes based on Plaintiff's belief that "clarification is necessary."

The Court will address each category in turn.

## Category A – Changes to make an answer more accurate and complete.

In support of the changes to the following deposition testimony, Plaintiff states that the proposed changes will make his answers more accurate and complete:

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 1 | 16:11 | Add: "I understood I was employed by Harrah's and Caesars Entertainment Corporation." |
| 2 | 36:6 | From "1993, to the best of my recollection" to "I do not know." |
| 3 | 38:23 | Add: "She treated me differently and worse than employees who were not disabled." |
| 4 | 39:14 | Add: "She treated me differently and worse than employees who were not disabled." |
| 5 | 40:10 | Add: "Only as it relates to me." |
| 6 | 54:23 | Add: "At times it was, at times it was not." |
| 7 | 66:9 | Add: "However, I believe that Harrah's added to the size of my bid area over time. So even though I maintained the same bid over the years, Harrah's kept increasing the size of the area, including the addition of the convention center. Harrah's added at least one other EVS cleaner to that same area following my termination, so that it was not the responsibility of a single cleaner." |
| 8 | 66:17 | Add: "I believe I had the same bid, but the areas I was responsible for cleaning within that bid were expanded by Harrah's over the years." |
| 9 | 82:4 | Add: "I was afraid that if I did, she would retaliate against me." |
| 10 | 93:24 | From "No" to "I don't know." |
| 11 | 94:2 | From "No" to "In certain ways." |
| 12 | 102:25 | Add: "As I explained above, I was requesting it as an accommodation for my disability." |
| 13 | 106:15 | Add: "I understood my bid area to be the largest of any EVS cleaner. It was too big for any one cleaner, and management knew that, which is why they added more cleaners to my area after I was fired." |
| 14 | 110:20 | From "Correct. Yes" to "I don't know under these circumstances." |
| 15 | 110:25 | Add: "Though under these circumstances it might have been different." |
| 16 | 120:1 | Add: "As I explained above, it was a request for an accommodation due my disability." |
| 17 | 136:9 | Add: "Now looking back and considering how she treated me worse than non-disabled employees, I do believe she was targeting me because of my disability. At the time, however, I did not complaint about it." |
| 18 | 137:16 | Add: "She was particularly harsh towards me though, which includes |

| Change No. | Page:Line | Proposed Change |
|---|---|---|
|  |  | providing me with false criticism. I am not aware of her treating non-disabled employees in this manner." |
| 19 | 138:1 | Add: "To my knowledge, Procaccini treated me worse than others." |
| 20 | 151:12 | Add: "During those particular conversations." |
| 21 | 151:17 | Add: "During those particular conversations." |
| 22 | 151:20 | Add: "…during those particular conversations." |
| 23 | 151:23 | Add: "Yes." |
| 24 | 152:3 | Add: "I also testified that she went after me and targeted me because of my disability and treated me worse than non-disabled cleaners." |
| 25 | 166:11 | Add: "And my father, as I described above." |
| 26 | 166:16 | Add: "Not me personally." |
| 27 | 168:7 | Add: "Yes. Human resources knew I was being targeted by Procaccini because of my disability and that I had complained about it, and they did nothing to investigate it or prevent me from being further discriminated against, which is exactly what happened. That was, among other things, unprofessional and inappropriate of human resources." |
| 28 | 171:23 | Add: "Though I would not call it a 'choice.'" |
| 29 | 186:16 | Add: "The stress from COVID-19 was in addition to the immense emotional distress caused by my wrongful termination. I still suffer from the stress due to the termination to this day." |
| 30 | 202:22 | Add: "I don't recall using any profanity at all, no." |
| 31 | 204:23 | Add: "But being written up falsely in the first place was discriminatory. As I see it, her reducing the discipline was merely an acknowledgment that the discriminatory discipline was unwarranted." |
| 32 | 220:17 | Add: "Occasionally I refused to sign discipline to indicate that I did not agree with it and wanted to challenge its validity." |
| 33 | 224:10 | Add: "By not signing it, I wanted to indicate that I did not agree with it and wanted to challenge its validity." |
| 34 | 230:2 | Add: "I was glad to see it reduced, which I understood to be an acknowledgment that the initial discipline was not warranted; however, no discipline should have been issued at all, as I had performed my job up to standards." |
| 35 | 231:16 | Add: "But to be clear, my performance had been acceptable." |
| 36 | 237:11, 237:22 | Add: "I was glad to see it reduced, which I understood to be an acknowledgment that the initial discipline was not warranted; however, no discipline should have been issued at all, as I had performed my job up to standards." |
| 37 | 280:12 | Add: "At certain times." |
| 38 | 280:19 | Add: "At certain times." |
| 39 | 283:22 | Add: "I had been doing this same job for over two decades and always used chemicals to clean the restrooms. Although I cannot recall which particular day this is referring to, I don't believe this is true. It makes no sense." |
| 40 | 285:12 | Add: "I see that, but I disagree that there was any occurrence to begin |

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| | | with." |
| 41 | 294:18 | Add: "Though I do not believe any discipline should have been issued at all in the first place." |
| 42 | 295:17 | Add: "I don't know either way, as discovery is still ongoing and that's one of the things we're all trying to determine. At the very least, I know the write up was unfounded, and I am not aware of non-disabled employees being issued unfounded write ups." |
| 43 | 299:21 | Add: "However, I disagree with this write up. It is false. I did clean my area up to standards." |
| 44 | 306:23 | Add: "But to be clear, I don't believe any discipline should have been issued at all. I performed my job up to standards." |
| 45 | 314:16 | Add: "I explained the situation to Geraci, which is that a trash bag had ripped, through no fault of my own. I asked her for help. And she knew I was calling because I needed help. Why else would I be calling. She did not offer me any help and instead told me to handle it on my own the best I could. Which is what I did. I was trying to rush because it was near the end of my shift that day and I could be written up if I clocked out too late. I disagree that I did anything wrong on this occasion or that I overloaded my cart. I was doing everything in accordance with policy and up to standards. I do not know why I was not given any help." |
| 46 | 320:13 | Add: "I still don't know if I put the wrong date in or if the document was altered, I just don't know. I have no reason to believe I would have incorrectly dated the document." |
| 47 | 322:12 | Add: "I just know that I was informed that if I signed the document I would be returned to work with no prior discipline, since the prior discipline was unfounded. I would be starting fresh. The exact words I cannot recall, but I believe the words 'clean slate' were used." |
| 48 | 325:11 | Add: "I physically signed the document. But I was not involved in negotiating it, was not present for discussions about it, was not given an opportunity to speak with an attorney before signing, was not provided with an explanation of the document prior to signing, and I did not believe I had any choice but to sign in order to get my job back." |
| 49 | 352:7 | Add: "But to be clear, I should not have been issued any discipline in the first place, as I had always cleaned up to standards." |
| 50 | 358:11 | Add: "To be clear, I always cleaned this area up to standards. If it was dirty, it was through no fault of my own, and I would have made that clear to Robin Carter." |
| 51 | 367:16 | Add: "It took roughly two minutes each way." |
| 52 | 367:20 | Add: "But to be clear, I did not leave the pizza box in the middle of the walk way." |
| 53 | 370:16 | Add: "Doing my work means clearing the trash bags as quickly as possible so that they do not become full and overflow, which can create hazards, such as trash falling out of the receptacles onto the floor, or people placing items on top of the trash can which could potentially be |

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| | | knocked off and break onto the floor creating slipping hazards." |
| 54 | 384:7 | Add: "At the time, my bid area was one of the largest, if not the largest, area of all the EVS cleaners. The area had significantly increased in size over the years. Harrah's proceeded with the termination. But then right after I was terminated, they split my area so that it was covered by more than just one cleaner." |
| 55 | 384:20 | Add: "The issue was that my job bid area was very large, larger than other EVS cleaners. And even though I was always cleaning up to standards, we were trying to work with Harrah's to see whether reducing the size of the cleaning area might make sense." |
| 56 | 385:7 | Add: "I was still able to clean up to standards despite the size of the area, but it was a lot for one person. And Harrah's new that." |
| 57 | 391:9 | Add: "Although I do not know how Harrah's duty to accommodate disabled employees might impact this process." |
| 58 | 408:22 | Add: "Harrah's did not offer or allow me to return to work after my March 2017 termination. I did not want to return to work if it meant I would be forced to waive my right to pursue discrimination claims." |
| 59 | 434:5 | Add: "I had complained about discrimination previously, and nothing was done about it. I was twice terminated for false reasons and then brought back after it was determined that those terminations were not legitimate. I feared that Harrah's would just continue to harass me and force me out because of my disability." |
| 60 | 435:24 | Add: "Procaccini was singling me out. She repeatedly issued me discipline that was not at all warranted. And after I grieved them, those disciplines were often determined to be illegitimate. I did not see her issuing false discipline to my non-disabled coworkers. She knew I had a disability." |
| 61 | 439:4 | Add: "Her demeanor in general was not the best. But with me she was much harsher and routinely looked for ways to write me up even if there was no legitimate basis to do so. This was not how she treated the other EVS cleaners." |
| 62 | 440:15 | Add: "Other than what I've already testified to." |
| 63 | 460:10 | From "No, I did not. Oh, boy" to "No I did not, except for the complaint my father submitted on my behalf in 2016." |
| 64 | 460:25 | Add: "Aside from what I've already testified to during the course of my two-day deposition." |

The Court finds the following proposed changes are not necessarily contradictory to other testimony given by Plaintiff and finds plausible Plaintiff's justification that the proposed changes may make his answers more complete or accurate.  The Court will therefore permit the following changes:

**Nos. 1, 12, 14, 16, 25, 37, 38, 42, 51, and 57.**

Particularly, as to Change Nos. 12 and 16, the Court finds the change are consistent with prior testimony, where Plaintiff stated he asked for an easier area due to his handicap. *See* Pl.'s Dep. 100:10–104:7.  As to Change Nos. 14, 15, and 57, the Court finds nothing in the record suggests that Plaintiff had the level of familiarity with the collective bargaining agreement to respond with any degree of certainty to the questions posed.  As to Change No. 25, the Court finds this change is consistent with prior testimony.

Notwithstanding Plaintiff's claims that the following proposed changes may make his answer more complete or accurate, the Court will strike the proposed changes as they are contradictory and inconsistent with other deposition testimony provided by Plaintiff:

**Nos. 3, 4, 6, 10, 11, 18, 19, 27, 45, 47, 60, and 61.**

Particularly, as to Change Nos. 3 and 4,  Plaintiff volunteered this information just prior to being asked about it, and elaborated that Ms. Procaccini was vindictive to "[b]asically anybody she wanted to" and that she was generally a tough manager to everyone. Pl.'s Dep. 37:22–39:8. He later testified that when he said Ms. Procaccini was vindictive, he meant she was not very well liked by the EVS cleaners in general. *See id.* 136:18–25.  As to Change Nos. 18 and 19, the proposed changes are inconsistent with Plaintiff's testimony.  Throughout his deposition, Plaintiff testified that Ms. Procaccini was tough on everyone. As to Change No. 6, not only did Plaintiff's choice of words indicate the certainty of his response, he followed up by elaborating that "constant

[sic] people [were] in and out." *Id.* 54:25–55:1.  As to Change Nos. 10 and 11, nothing in the testimony suggests Plaintiff did not know the response to this question, or that the questions were inaccurate or incomplete.  Plaintiff testified that his cerebral palsy was on the milder side of the spectrum.  Plaintiff also answered numerous questions about whether his cerebral palsy created limitations in him. *Id*. 92:13–96:7.  As to No. 27, the proposed change is inconsistent with other testimony that Human Resources was not aware, prior to his termination, that Plaintiff suffered from cerebral palsy. *Id.* 166:7–169:9.  Plaintiff twice testified that he did not ask for assistance. The proposed change is inconsistent with these testimonies.  As to No. 47, the proposed change is inconsistent with other testimony that the term "clean slate" was not used to Plaintiff's knowledge. *Id.* 322:4–8.  As to No. 60, the proposed amendment is inconsistent with other testimony by Plaintiff that to his knowledge, Ms. Procaccini did not know he suffered from cerebral palsy. *Id.* 146:15–23.  As to No. 61, the proposed change is inconsistent with other testimony by Plaintiff that Ms. Procaccini was tough on everyone, as discussed, *supra*.

Notwithstanding Plaintiff's contention that the proposed amendments made his answers more accurate and complete, the Court will strike the following proposed changes as Plaintiff provided responsive answers to the questions posed.  Additionally, the scope of the proposed changes was sometimes gratuitously beyond the scope of the questions asked.  Kevin Console, Esquire, counsel for Plaintiff, also took advantage of the opportunity to examine Plaintiff at the close of Raymond Kresge, Esquire's examination of Plaintiff.  During the examination of his client, Mr. Console failed to elicit or even attempt to elicit the "accurate" and "complete" responses that Plaintiff now proposes:

**Nos. 2, 7, 8, 9, 13, 15, 17, 20, 21, 22, 23, 24, 26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 39, 40, 41, 43, 44, 46, 48, 49, 50, 52, 54, 55, 56, 58, 59, 62, 63, and 64.**

Particularly, as to Change No. 13, the proposed amendment is not fully responsive to the question posed. As to Nos. 17, 23, 24, Plaintiff was also given an opportunity to elaborate on his response to No. 17. He adequately elaborated that "[Ms. Procaccini] had her moments. I'll put it that way. She was vindictive in this time frame." *Id*. 136:13–15. Plaintiff's responses in Nos. 23 and 24 are also consistent with his response in No. 17. As to No. 26, in follow-up questions to this response, Plaintiff testified that "not to his knowledge" that anyone in Human Resources or Human Relations knew he had cerebral palsy prior to his termination. *See id.* at 167:4. As to Nos. 55 and 56, Plaintiff answered the question posed. When the question was asked a second time, Plaintiff confirmed his response. *Id.* 384:20–385:7. No attempt was made by Mr. Console for Plaintiff to elaborate on this response. As to No. 58, Plaintiff answered the question posed, and repeated his response when questioned again by Mr. Kresge. *See id.* 408:22–25.

The Court also notes that Plaintiff provided no testimony at the cited transcript text in Change No. 53.

**<u>Category B – Changes Based on Confusion, Vagueness or Misleading Questions.</u>**

For the following proposed amendments under Category B, Plaintiff contends that the questions were confusing, vague, or misleading:

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 65 | 34:6 | From "Yes" to "Possibly." |
| 66 | 38:2 | Add: "Procaccini was targeting me, but I don't recall that occurring in 1993." |
| 67 | 78:11 | From "I'm going to say 2014" to "I still believe it was in 2016, as I initially testified." |
| 68 | 78:13 | From "Fourteen, yes" to "I still believe it was in 2016, as I initially testified." |
| 69 | 80:18 | Add: "Though I always thought Procaccini targeted me because of my disability." |
| 70 | 81:13 | Add: "Aside from the complaint my father submitted on my behalf and at my direction, which I believe was in 2016." |
| 71 | 96:3 | Add: "At least not my ability to work as an EVS cleaner at Harrah's and Caesars." |
| 72 | 96:7 | Add: "Except that my gate is noticeably different than most people." |
| 73 | 120:24 | From "No, she didn't" to "Possibly." |
| 74 | 123:18 | Add: "Except for the request to Margie Seidman, who I understood would relay the request to other individuals at Harrah's. I have no reason to believe that request was not relayed to Harrah's." |
| 75 | 128:12 | Add: "But according to Procaccini's testimony, it appears Patillo was involved." |
| 76 | 129:3 | Add: "Aside from the March 2017 incident involving the pizza box which led to my termination." |
| 77 | 130:1 | Add: "I understand that Robert Patillo also supervised Procaccini." |
| 78 | 146:23 | Add: "But Procaccini must have known that I had some type of disability, as it is very noticeable and was common knowledge." |
| 79 | 147:9 | Add: "But Carter must have known that I had some type of disability, as it is very noticeable and was common knowledge." |
| 80 | 147:13 | Add: "But Walley must have known that I had some type of disability, as it is very noticeable and was common knowledge." |
| 81 | 147:17 | Add: "But Walley must have known that I had some type of disability, as it is very noticeable and was common knowledge." |
| 82 | 147:21 | Add: "But Geraci must have known that I had some type of disability, as it is very noticeable and was common knowledge." |
| 83 | 217:12 | Add: "But to be clear, my performance had not been poor." |
| 84 | 219:2 | Add: "But to be clear, my performance had been acceptable." |
| 85 | 238:5 | Add: "Not in the sense that my cerebral palsy caused any alleged issues in my performance or impaired my ability to carry out my job duties. Despite my disability, I was able to perform my EVS cleaner job and did in fact perform that job up to standards at all times. I believe I was treated differently because I have a noticeable disability." |

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 86 | 278:10 | Add: "But to be clear, my performance was measured on my ability to clean my work areas up to standards, not on how clean my work area may have been at a given time. If I cleaned my area up to standards and then through no fault of my own it became dirty thereafter, that does not reflect on my performance as an EVS cleaner." |
| 87 | 284:12 | Add: "But to be clear, no reminder was needed, certainly not a formal write up, as I always used the proper chemicals and cleaned up to standard." |
| 88 | 289:1 | Add: "But only if I had failed to clean up to standards, including failing to clean thoroughly or failing to clean frequently enough. If I cleaned my area up to standards and then through no fault of my own it became dirty thereafter, that does not reflect on my performance as an EVS cleaner." |
| 89 | 298:2 | Add: "But only if I had failed to clean up to standards, including failing to clean thoroughly or failing to clean frequently enough. If I cleaned my area up to standards and then through no fault of my own it became dirty<br>thereafter, that does not reflect on my performance as an EVS cleaner." |
| 90 | 298:10 | Add: "But only if I had failed to clean up to standards, including failing to clean thoroughly or failing to clean frequently enough. If I cleaned my area up to standards and then through no fault of my own it became dirty thereafter, that does not reflect on my performance as an EVS cleaner." |
| 91 | 308:12 | Add: "I don't recall any discriminatory comments being made during the issuance of the termination, but I do believe I was being targeted because of my disability, and that this unfounded suspension and termination was an example of that. I understood the termination<br>being reversed to be an acknowledgment that the discipline was unwarranted." |
| 92 | 320:21 | From "Correct" to "Possibly." |
| 93 | 331:22 | From "Yes, it is" to "I don't know." |
| 94 | 337:18 | Add: "My cerebral palsy did not impair my ability to do my job and did not cause my performance to suffer in the way that Harrah's has claimed. My performance was up to standards. I believe that Harrah's targeted and terminated me because of my disability, despite my performance, which is why I brought this lawsuit. My cerebral palsy did not cause my termination, Harrah's bias against me for having a disability did" |

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 95 | 353:14 | From "No, it did not" to "My cerebral palsy did not impair my ability to do my job and did not cause my performance to suffer in the way that Harrah's has claimed. My performance was up to standards, including in this instance. I believe that Harrah's targeted me because of my disability, despite my performance, which includes issuing me this unfounded suspension. This suspension was discriminatory." |
| 96 | 359:2 | Add: "I would clean it before 2:30 p.m., and we would clean it ever hour on the half hour between me and my partner." |
| 97 | 377:8 | Add: "My cerebral palsy did not impair my ability to do my job and did not cause my performance to suffer in the way that Harrah's has claimed. My performance was up to standards. I believe that Harrah's targeted and terminated me because of my disability, despite my performance, which is why I brought this lawsuit. My cerebral palsy did not cause my termination, Harrah's bias against me for having a disability did." |
| 98 | 389:14 | Add: "Although I don't recall mention of my specific condition, cerebral palsy, I do recall there being discussion that I suffered from a disability." |
| 99 | 392:24 | From "That's correct" to "Possibly. I do not know." |
| 100 | 398:21 | Add: "My cerebral palsy did not impair my ability to do my job and did not cause my performance to suffer in the way that Harrah's has claimed. My performance was up to standards. I believe that Harrah's targeted and terminated me because of my disability, despite my performance, which is why I brought this lawsuit. My cerebral palsy did not cause my termination, Harrah's bias against me for having a disability did." |
| 101 | 433:2 | Add: "I loved that job and I loved going to work there, but it was extremely stressful fearing that I might be falsely disciplined at any moment. I felt like I had a target on my back because of I had a noticeable disability." |
| 102 | 433:12 | Add: "I loved having a job. It was everything to me. I looked forward to going to work. At the same time, I knew that every day there was a chance that I was going to be issued false discipline by management, despite my excellent performance, and that was an awful feeling." |
| 103 | 433:16 | Add: "My cerebral palsy did not impair my ability to do my job and did not cause my performance to suffer in the way that Harrah's has claimed. My performance was up to standards. I believe that Harrah's targeted and terminated me because of my disability, despite my performance, which is why I brought this lawsuit. My cerebral palsy did not cause my termination, Harrah's bias against me for having a disability did." |
| 104 | 437:24 | From "No, not that I recall" to "She issued me unfounded discipline and falsely criticized my performance. I believe she was trying to force me out." |

The following proposed amendments are Permitted as the Court finds it plausible that the question may have been confusing, vague or misleading:

**Nos. 66 and 96.**

The following proposed amendments are stricken, as the Court disagrees the questions are confusing, vague, or misleading:

**Nos. 65, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 97, 99, 100, 101, 102, 103, and 104.**

Particularly, as to Change No. 70, Plaintiff's response was consistent with a series of follow-up questions about whether he ever expressed concerns about disability discrimination during his tenure. He consistently responded, no. *See id.* at 80:24–82:4. There was also nothing misleading or vague about the follow-up questions. As to No. 100, Plaintiff's response was consistent with his response to No. 97, and consistent with testimony provided on page 433 of the transcript.

The Court also notes that Plaintiff provided no testimony at the cited transcript text in Change No. 95.

### Category C – Changes based on Plaintiff's Confusion, Misunderstanding and Misspeaking.

Category C consists of proposed changes that Plaintiff sought to justify by stating that he was confused by the questions, he misunderstood the questions, or that he misspoke.

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 105 | 38:5 | From "She was manager" to "I do not know." |
| 106 | 79:17 | From "No. I don't know" to "As I explained earlier, my father submitted a complaint to Carmen Alvarez in human resources on my behalf and at my direction." |
| 107 | 152:17 | From "Not to my knowledge, no" to "Yes, there were times when she treated me in a demeaning manner, including raising her voice and being overly harsh towards me, which I understood was part of her efforts to target me because of my disability." |
| 108 | 167:4 | From "Not to my knowledge" to "They should have known. That's how I was hired. It was in my file. Human resources had access to that information. Furthermore, my disability was very noticeable." |
| 109 | 185:11 | From "No, it hasn't" to "Of course earning less money has affected my life in terms of having less money to spend and enjoy, and having less money to save in terms of planning for my future." |
| 110 | 187:8 | From "No" to "I was subjected to a hostile work environment because of my disability leading up to my March 2017 termination, all of which caused me emotional distress." |
| 111 | 190:25 | From "No, sir" to "Yes, as I described above, I was targeted because of my disability including being issued false write ups, which caused me emotional distress." |
| 112 | 228:16 | From "Yes, it is. I'm sorry" to "I do not know what the union is thinking when they make their decisions." |
| 113 | 320:21 | From "Correct" to "Possibly." |
| 114 | 320:24 | From "Yes, that's correct" to "Possibly." |
| 115 | 323:1 | From "Not to my knowledge" to "I cannot recall with certainty exactly what words were used to convey that." |
| 116 | 345:7 | From "Yes, correct" to "No, I initially cleaned the restroom up to standards. I did not do anything wrong and should not have received discipline. At some point after I cleaned the restroom up to standards, the restroom may have become dirty again, which sometimes happens but that was not my fault. And immediately upon being asked to re-clean the restroom, I again cleaned it up to standards. I explained that I had cleaned the restroom up to standards." |
| 117 | 392:24 | From "That's correct" to "Possibly. I do not know." |
| 118 | 396:11 | From "Yes, correct" to "I don't recall that." |
| 119 | 396:19 | From "To my recollection, yes" to "I don't recall that." |

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 120 | 397:16 | From "Correct, yes" to "I don't recall that." |
| 121 | 417:8 | From "No, I did not" to "Occasionally, yes, of course. I would walk through areas that were not mine from time to time." |
| 122 | 455:17 | From "I'm going to say January" to "I don't recall what month it was." |
| 123 | 455:23 | Add: "But I do not recall what month it was." |
| 124 | 457:7 | Add: "To be clear, I am referring to a complaint submitted after my termination from Harrah's and Caesars." |
| 125 | 458:9 | Add: "As I testified to earlier, the complaint I submitted internally before my termination was in 2016 to the best of my recollection, not 2017." |
| 126 | 458:15 | Add: "I believe this complaint was filed after my termination." |
| 127 | 458:23 | From "Yes" to "I don't believe I submitted an internal complaint in January 2017." |
| 128 | 459:19 | From "That's correct" to "I don't believe I submitted an internal complaint in January 2017." |

The following proposed amendments are Permitted as the Court finds it plausible that Plaintiff may have been confused, misunderstood the question asked or that he misspoke:

**Nos. 105, 109, 117, and 118.**

The following proposed amendments are stricken as Plaintiff's responses did not suggest that he was confused or that he misunderstood the questions. Claims of misspeaking are also not persuasive as responses were generally consistent with other deposition testimony. Additionally, the scope of the proposed changes were sometimes gratuitously beyond the scope of the questions asked:

**Nos. 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 119, 120, 121, 122, 123, 124, 125, 126, 127, and 128.**

Particularly, as to Nos. 110 and 111, Plaintiff confirmed his response to No. 110 in his response in No. 111. As to No. 121, Plaintiff's response was consistent with his responses to follow-up questions. *See id.* 417:8–418:20. As to Nos. 122 and 123, Plaintiff's response to No. 122 was consistent with his responses to follow-up questions posed in No. 123.

18

**Category D – Changes that More Accurately Reflects What Occurred.**

For proposed changes under Category D, Plaintiff attempts to justify these changes by claiming the proposed amendments reflect "what more accurately occurred."

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 129 | 78:19 | Add: "I believe this was in 2016." |
| 130 | 80:6 | Add: "I believe it was in 2016, not 2014." |
| 131 | 80:23 | Add: "I believe the complaint to human resources was made in 2016, not 2014." |
| 132 | 371:7 | Remove "…forgot…" and add "…left…" |
| 133 | 395:13 | From "Yes, I did" to "I don't recall." |
| 134 | 454:22 | From "I don't recall. I don't recall who, sir" to "As I testified earlier, my father submitted it on my behalf to human resources in 2016." |

The following proposed amendments are permissible because they are not necessarily contradictory to other testimony given by Plaintiff and the Court finds it plausible that the proposed changes may more accurately reflect what occurred:

**Nos. 129, 130, and 133.**

The following proposed amendments are stricken. The scope of the proposed amendments were beyond the scope of the questions asked and/or other testimony provided by Plaintiff was consistent with other responses provided in the deposition:

**Nos. 131, 132, and 134.**

**Category E – Changes Warranting Clarification.**

For the following proposed amendments under Category E, Plaintiff contends that "clarification is necessary."

| Change No. | Page:Line | Proposed Change |
|---|---|---|
| 135 | 99:17 | Add: "That is a guess." |
| 136 | 323:1 | From "Not to my knowledge" to "I cannot recall with certainty exactly what words were used to convey that." |
| 137 | 344:18 | Add: "But to be clear, I had initially cleaned it up to standards." |
| 138 | 366:5 | Add: "I did not leave the pizza box in the marble walkway. I safely tucked it away next to the trash can during that time. I could not have removed it immediately because Procaccini instructed me not to use my cart, which meant I could only carry so much at one time. |
| 139 | 417:14 | Add: "Although it was not my responsibility to formally inspect the areas of other EVS cleaners, I did occasionally observe their areas in Harrah's." |
| 140 | 425:18 | Add: "Although I don't recall their names, they were other EVS cleaners at Harrah's." |
| 141 | 426:8 | Add: "Although I could not answer the question because I didn't understand it and counsel did not rephrase it, there were other EVS cleaners who were not disabled who were not to my knowledge falsely disciplined and terminated." |
| 142 | 431:11 | Add: "But I understood from her actions, including her providing me with false performance criticism, that she wanted me out." |

The following proposed amendments are stricken, as the Court disagrees that clarification is necessary or that the proposed amendment even clarify Plaintiff's original response. Moreover, as elsewhere in the deposition, Plaintiff's original responses were consistent with responses provided elsewhere in the deposition. Additionally, the proposed changes were beyond the scope of the question asked.

**Nos. 135, 136, 137, 138, 139, 140, 141, and 142.**

<u>**CONCLUSION**</u>

For the reasons set forth, the Court will grant in part and deny in part Defendants' motion. The Court will substantially strike Plaintiff's proposed errata changes as discussed. The Court will otherwise deny the motion and allow the remaining proposed errata changes into the record.

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **30th** day of **June**, **2022**, that Defendants' Motion to Strike Plaintiff's Errata Sheet [ECF No. 78] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the following proposed changes are **STRICKEN**:

**Category A:** Nos.  2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 15, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 39, 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 52, 54, 55, 56, 58, 59, 60, 61, 62, 63 and 64.

**Category B:** Nos. 65, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 97, 99, 100, 101, 102, 103, and 104.

**Category C:** Nos. 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 119, 120, 121, 122, 123, 124, 125, 126, 127 and 128.

**Category D:** Nos. 131, 132 and 134.

**Category E:** Nos. 135, 136, 137, 138, 139, 140, 141, and 142; and it is further

**ORDERED** that all other changes not identified above are **PERMITTED**; and it is further

**ORDERED** that Plaintiff's original deposition testimony remains a part of the record; and it is further

**ORDERED** that Defendants may re-depose Plaintiff, limited to the Errata Sheet changes allowed into the record.

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc: Hon. Eduardo C. Robreno, U.S.D.J.